PEOPLE v SUITER

Docket No. 28990. Submitted May 10, 1977, at Lansing.—Decided
    April 3, 1978.

William E. Suiter was convicted by a jury in Montmorency
    Circuit Court, Joseph P. Swallow, J., of arson of real property.
    On appeal, the defendant contends that reversal is required
    because the county prosecuting attorney acted as defense coun-
    sel in violation of statute, because the special prosecutor who
    was appointed to try the case made statements of his belief in
    defendant's guilt, and because the trial court erred by telling
    the jury, in response to a jury request, that the court was not
    permitted to allow the jury to view certain geographical areas
    because the jury had begun deliberations. *Held:*

1. Representation as defense counsel by the prosecutor does
    not automatically require reversal, and reversal is not man-
    dated where defendant's counsel was appointed prosecuting
    attorney before the trial, the defendant wished to continue with
    his counsel despite advice by the court that he did not have to,
    there was no showing that while serving as prosecutor defend-
    ant's counsel did anything as prosecutor which pertained to the
    defendant's case, and there was no showing of prejudice.

2. The remarks of the prosecutor as to his belief in defend-
    ant's guilt do not constitute reversible error because, when read
    as a whole, those beliefs were related by the prosecutor to the
    evidence.

3. Although the trial court does have discretion to allow a
    jury a view of the premises where a crime was committed even
    after the jury begins deliberations, there was no error in the

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 63 Am Jur 2d, Prosecuting Attorneys § 29.

[2] 5 Am Jur 2d, Appeal and Error § 948 *et seq.*

[3] 75 Am Jur 2d, Trial § 192 *et seq.*

    Supreme Court's view as to what courtroom statements made by
        prosecuting attorney during criminal trial violate due process or
        constitute denial of fair trial. 40 L Ed 2d 886.

[4, 6] 75 Am Jur 2d, Trial §§ 74, 75.

    Unauthorized view of premises by juror or jury in criminal case as
        ground for reversal, new trial, or mistrial. 58 ALR2d 1147.

court's refusal to allow a view because the jury's request was to view areas other than the premises where the crime was committed.

Affirmed.

M. J. KELLY, P. J., dissented on the basis that the language of the statute prohibiting a prosecuting attorney from defending any person charged with crime within the county of which he is prosecuting attorney is mandatory and renders the waiver of error by defendant ineffectual. Judge KELLY also noted that the trial court's failure to exercise its discretion in disallowing a view of certain areas by the jury was error, but the error did not require reversal because counsel for both sides concurred in the trial court's decision.

OPINION OF THE COURT

1. CRIMINAL LAW—PROSECUTING ATTORNEYS—DEFENSE COUNSEL—PREJUDICE.

Reversal of a defendant's conviction on the grounds that his defense counsel continued to represent him after assuming office as prosecuting attorney is not required where the defendant clearly wished to continue with his attorney after being advised that he did not have to do so, where there is no showing of prejudice, and where there is no affirmative showing that while serving as prosecutor defendant's counsel did anything as prosecutor which pertained to the defendant's case.

2. CRIMINAL LAW—APPEAL AND ERROR—TACTICAL ERROR—GROUNDS FOR REVERSAL.

A defendant who attempts to use a possible error to his tactical advantage should not be allowed to use that error as grounds for reversal.

3. CRIMINAL LAW—PROSECUTING ATTORNEYS—PROSECUTOR'S REMARKS—BELIEF IN DEFENDANT'S GUILT—EVIDENCE.

A prosecutor's remarks must be read as a whole, and no prejudicial error occurred where a prosecutor, in his closing argument, expressed his personal belief in the defendant's guilt and also related that belief to the evidence in the case, and where there was no objection to the prosecutor's remarks and no request for a curative instruction.

4. JURY—CRIMINAL LAW—JURY VIEW—JUDGE'S DISCRETION—PREMISES WHERE CRIME WAS COMMITTED.

The question of whether or not a jury may view the premises where a crime has been committed rests in the sound discretion of the trial court; there was no failure of a trial court to

recognize or exercise that discretion where it refused a jury's request to view areas other than the premises where the crime was committed.

Dissent by M. J. Kelly, P. J.

5. Criminal Law—Prosecuting Attorneys—Prosecutor as Defense Counsel—Statutes.

*The language of a statute which prohibits a prosecuting attorney from defending a person charged with a crime in the county of which he is prosecuting attorney is mandatory and renders ineffectual a defendant's waiver of the error by requesting that he continue to be represented by his attorney after his attorney assumed the office of prosecuting attorney, even though the defendant was given the opportunity to have different counsel (MCLA 776.14; MSA 28.1271).*

6. Criminal Law—Trial—Jury—Jury View.

*A trial court erred in telling a jury that the court was not permitted to allow the jury to view certain geographical areas because the jury had already begun its deliberations because the jury request should have been discussed in the context of an exercise of the court's discretion rather than being flatly foreclosed; however, reversal on this ground is not warranted where counsel for both parties concurred in the trial court's decision to disallow a view (MCLA 768.28; MSA 28.1051).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jon L. Rise,* Prosecuting Attorney (Prosecuting Attorneys Appellate Unit, by *Thomas C. Nelson,* Assistant Attorney General), for the people.

*Marshall S. Redman,* Assistant State Appellate Defender, for defendant on appeal.

Before: M. J. Kelly, P. J., and Allen and D. E. Holbrook, Jr., JJ.

D. E. Holbrook, Jr., J. Defendant-appellant William Edward Suiter was convicted by jury of arson of real property, MCLA 750.73; MSA 28.268, after

a trial on January 14 and 15, 1976, the Honorable Joseph P. Swallow, Montmorency County Circuit Court Judge, presiding. The charge resulted from a fire in the Atlanta Coin Laundry, west of Gerber Road, Atlanta, Montmorency County, Michigan, on May 9, 1975. On February 23, 1976, appellant was sentenced to two to ten years imprisonment. He appeals as of right raising three issues on appeal.

The first reason advanced by appellant for reversing his conviction is that the county prosecutor acted as defense counsel at defendant's trial in violation of MCLA 776.14; MSA 28.1271. While it is true that he did we do not believe such practice to automatically require reversal. The defendant cites *People v LaPine,* 61 Mich App 345; 232 NW2d 401 (1975), as authority for the proposition that defendant's conviction must be reversed. This is not, in our opinion, what *LaPine* stands for. In *LaPine* this Court found waiver and no showing of prejudice and affirmed. While it is true the Court stated at 349 thereof: "While the actions of defense counsel in similar cases should be avoided, we see no reason to reverse defendant's conviction where he has not been prejudiced", such language supports the appellee's position and not that of the defendant.

Review of the court file indicates that defense counsel filed his appearance on behalf of the defendant on May 16, 1975. On July 24, 1975, the then prosecutor of Montmorency County filed a motion with the trial court to have one Jon L. Rise appointed special prosecutor for this particular case. An order granting such relief was issued by the court. On July 28, 1975, defendant was arraigned with his counsel being present. Defense counsel had previously represented defendant at the preliminary examination. On September 1, 1975, defendant's counsel was appointed prosecu-

tor of Montmorency County. The instant case was noticed for trial on November 20, 1975, and trial took place on January 14 and 15 of 1976. The record fails to reveal that while acting as prosecutor defense counsel performed any acts pertaining to defendant's case. The same was true in *LaPine, supra.*

Prior to the taking of any testimony in defendant's case the following colloquy transpired between the trial judge and defendant:

"THE COURT: * * * All right. Now, before we proceed, I think—and call the jury—the record should reflect we are out of the presence of the jury at this time. And there has been prior discussions with the Court among counsel relative to the fact that Mr. Tibbetts is now the prosecuting attorney. But he is representing Mr. Suiter as defense counsel.

"Now, Mr. Suiter, I understand that you are satisfied with Mr. Tibbetts as your defense counsel, even though the fact that he is now prosecutor. Is that correct?

"MR. SUITER: Yes, sir.

"THE COURT: All right. And you want to proceed with Mr. Tibbetts as your attorney?

"MR. SUITER: Yes, sir.

"THE COURT: Even understanding the fact that this may constitute—while Mr. Tibbetts is bound by his oath as a lawyer to do the best job that he can for you, and I'm sure he will, but even under that circumstance, it is possible for you to raise an objection of conflict of interest and have another attorney appointed for you. But even realizing that, it's my understanding, it has been expressed to me by Mr. Tibbetts, that you desire to proceed with him as your defense counsel. Is that correct?

"MR. SUITER: I am satisfied.

"THE COURT: All right. And you want to proceed with him as your counsel?

"MR. SUITER: Right."

From the foregoing it is apparent that defendant wanted to proceed with his attorney despite repeated advice by the court that he did not have to do so and that the court would appoint substitute counsel if defendant so wished. Such conduct by the defendant, in our opinion, constitutes both acquiesence and waiver. Such also was the case in *LaPine, supra.*

The circumstances herein are most analagous to *LaPine* and absent a showing of prejudice or an affirmative showing that while serving as prosecutor defendant's counsel did something as prosecutor which pertained to defendant's case reversal is not mandated on the basis of the prosecutor's violation of MCLA 776.14; MSA 28.1271. We find no such affirmative action on the part of the prosecutor nor any prejudice. Moreover, when a defendant attempts to use a possible error to his tactical advantage and the results are not to his liking, this Court will not allow him to use that as grounds for reversal. *People v Baines,* 68 Mich App 385, 388; 242 NW2d 784 (1976). While the prosecutor may or may not be subject to criminal prosecution and/or disciplinary action for violation of the statute such violation by the prosecutor, under the facts in this case, is not grounds for reversal of defendant's conviction.

The second reason given by appellant for reversal of his conviction are the following remarks made by the prosecutor during closing argument:

"Now, let's review the facts. First of all, did he start the fire? I feel he did. If I didn't feel he did, I wouldn't be here."

Appellant claims that *People v Humphreys,* 24 Mich App 411; 180 NW2d 328 (1970), prohibits such remarks and labels them "prejudicial error".

We submit this is not the case at all. While it is true that the foregoing remarks, standing alone, might well constitute reversible error, when the special prosecutor relates his personal beliefs to the evidence same do not. *Humphreys, supra* at 414. Following the above quoted remarks the special prosecutor continued:

"And there are several things that indicate that to me. I think the strongest point is the fact that Deputy Teets and Deputy Baker saw him leaving, running from a burning building. Now, to say that he could not have known that building was on fire when a few seconds after he left it was completely filled with smoke, is ridiculous. He had to know it was on fire. And since he was the only one in the building, I feel he had to have started it.

"Now, what did he do after he left this burning building? Now, you will notice from this map that the laundromat is here, the Standard Station is here. What is in between? The Sheriff's Department. Now, did he call the Sheriff's Department to report the fire? No. Did he stop off at the Sheriff's Department and report the fire? No. In fact, when he was arrested—and remember at the time he was arrested the police officers testified that his car was parked in front of the Standard Station, the door open, the motor running, which indicates to me a hasty retreat from the auto—he denied knowing anything about a fire.

"Now, we didn't see him light the match. Be a heck of a lot easier if we did. We didn't. But you can, without any question in your mind, indicate from the circumstances involving this thing that he did in fact start that fire."

Prosecutorial remarks must be read as a whole and it is readily apparent from a reading of same together with the transcript that the special prosecutor related his personal beliefs to the evidence in the case and properly before the jury. Hence no reversible error. Furthermore, there was no objec-

tion to said remarks nor was there a request for a curative instruction.

As to the final issue advanced by appellant we find same to be equally lacking in merit. Appellant claims that the trial court was in error when it told the jury that it was not permitted to allow the jury, once deliberations had commenced, to view certain geographical areas. While we agree that the trial court has discretion to allow a jury a view of the premises even after deliberations have commenced, here the jury was not requesting to view the premises where the crime was committed. The request of the jury was stated thus:

"We, the jury, would like to know if it is at all possible if we could walk a couple of the routes on the map and visit a few of the spots referred to during the trial."

At no point in the request did the jury specifically request to view the premises where the crime took place. The law applicable to this final issue is set forth in 1 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 462, p 574, where it is stated:

"The question of whether or not the jury shall view the premises *where a crime has been committed* * * * rests in the sound discretion of the trial court." (Emphasis supplied.)

Since this is not what the jury requested there was no failure to recognize or exercise discretion on the part of the trial judge.

Affirmed.

ALLEN, J., concurred.

M. J. KELLY, P. J. *(dissenting).* I believe the viola-

tion of the statute mandates reversal. I agree that there is no clear demonstration of actual prejudice but this is really not a situation which lends itself to clearly defined prejudice. The statute provides:

"Sec. 14. It shall be unlawful for any prosecuting attorney of this state to defend or assist in the defense of any person charged with crime within the county of which he is prosecuting attorney." MCLA 776.14; MSA 28.1271.

If the error complained of had occurred in Southeastern Michigan, could we say that a prosecutor, elected or appointed, who assumed office September 1st, could continue to be active in the defense of a client and try his case as defense attorney some four or five months later? The word "shall" is "mandatory and imperative, and when used in a command to a public official, it excludes the idea of discretion". *Brown v Department of Military Affairs,* 30 Mich App 463, 467; 186 NW2d 747, 749 (1971).

We must determine what sanction should be invoked for "unlawful" activity on the part of the prosecuting attorney. I readily acknowledge the same distaste mentioned by the majority for allowing a defendant to use error which he has expressly waived as the basis for reversal. Perhaps I would be inclined to vote with the majority and let the violation here go to criminal prosecution or disciplinary action were it not for *People v LaPine,* 61 Mich App 345; 232 NW2d 401 (1975), which is cited by and relied on by both parties. Although the *LaPine* Court found no prejudice it cautioned that defense counsel in similar cases should avoid such conflict. Either that warning means something or it does not. I would hold that the mandatory language of the statute, coupled with the

message contained in *LaPine,* rendered the defendant's waiver ineffectual. Were we to require a showing of actual prejudice we would be ignoring the fact that this case was noticed for trial six months after *LaPine* had been released.

Furthermore, I find another distinction significant. Deputies, assistants, substitutes, and temporary public prosecutors are in a different category than public prosecutors themselves. A county prosecuting attorney in Michigan fills a constitutional office of great importance affected with a public trust. His powers are awesome and his duties should be carried out in a manner which reflects the highest ethical standards. He may be said to belong to the judicial branch of government, but in reality, he is the foremost representative of the executive branch in the enforcement of criminal law in his county. "It is against public policy for the prosecuting attorney, whose duty it is to look after the interests of the State and county and represent county officers, to take a private position antagonistic to that of, or conflicting with, his public duty." *Ray v Gun Plains Township,* 340 Mich 549, 555; 66 NW2d 95, 98 (1954).

I agree with the dissent of Judge BRENNAN in *People v LaPine, supra* at 350, that the purpose of the statute "is to avoid the possibility of any conflict of interest or the appearance of any impropriety in this area by the imposition of a flat prohibition against prosecuting attorneys".

Perhaps one other issue raised by defendant-appellant should be mentioned. The trial court was in error when it told the jury that it was not permitted to give the jury a view of certain geographical areas because the case was closed. A trial court has discretion under MCLA 768.28; MSA 28.1051 to allow a jury view, even after

deliberations have begun. *People v Dykes,* 37 Mich
App 555; 195 NW2d 14 (1972). I would not be
inclined to vote reversal on this ground alone
because, very clearly, counsel for each side concur-
red in the trial judge's decision to disallow a view.
The point is that the jury could have been allowed
a view and their request should have been dis-
cussed in the context of an exercise of the court's
discretion rather than as being flatly foreclosed
since deliberations had begun.

I would reverse.